[Crim. No. 20243. Second Dist., Div. Five. June 26, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD PATRICK SANTOS, Defendant and Appellant.

398

## COUNSEL

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert F. Katz and Ronald M. Weiskopf, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Defendant was charged by information with murder. (Pen. Code, § 187.) He pleaded not guilty. A motion to suppress evidence seized pursuant to a search warrant was denied. A motion to suppress a tape-recorded conversation between defendant and his wife was also denied. A motion to suppress certain admissions made by defendant to a polygraph interviewer and to investigating officers was granted. A jury was impaneled and presentation of evidence commenced. Defendant then withdrew his not guilty plea and pleaded guilty to first degree murder with the understanding that he would be sentenced to life in prison. (Pen. Code, § 1192.5.) This sentence was pronounced, after formal denial of probation. The appeal is from the judgment. (Pen. Code, § 1538.5, subd. (m).)

The affidavit in support of the search warrant contained the following factual allegations: On May 13, 1970, officers found the body of one Michael Kopychinski in a Volkswagen. He had been shot to death. On May 15, 1970, John Burns, a bartender at the Mansfield House, told offi-

cers that Kopychinski had been in the Mansfield House on May 12, 1970. Defendant had been in the bar at the same time. Kopychinski had left at 11:30 p.m. Defendant had left immediately thereafter. Burns further told officers that a person known to him as "Chuck" had told him that defendant had robbed him three weeks earlier.

The affidavit further alleged that one Charles Duncan had identified defendant as the man who robbed him on April 6, 1970, after meeting him in the Mansfield House.

It was further alleged that defendant was arrested May 23, 1970, for the robbery of one Jose Moncada who identified defendant as having robbed him. At the time of his arrest defendant gave his address as 712 South Westlake, apartment 215.

The affidavit further alleged that defendant had a conversation with his wife in the visiting room of the Los Angeles City Police Department central jail at about 8:30 a.m., May 26, 1970. Defendant and his wife conversed by means of a telephone intercom system. The conversation was monitored by the affiant, Officer Jacques, and his partner Officer Fox. During the conversation defendant stated, "I'm in for murder."[1] His wife asked whom he had killed. Defendant responded, "Careful, they've got these phones bugged." He then whispered what sounded like, "Get rid of it." His wife said, "Okay, I'll sell it." Defendant whispered, "Be quiet." His wife said, "No, no, I meant the TV."[2]

The affidavit further alleged that after overhearing this conversation, Officer Fox spoke to defendant's wife and told her that he was looking for a gun involved in the murder charge against defendant. She told the officer that there was a gun in a hanging lamp in apartment 215, 712 South Westlake Avenue. Prior to visiting defendant at the jail, she had told the affiant officer that she shared that apartment with defendant.

At the hearing on the motion to traverse the search warrant Officer Jacques testified that the intercom telephone over which defendant and his wife conversed at the jail was not part of any public telephone system. Officer O'Reilly, assigned to the electronic section of the police crime lab, testified that the intercom system in the visiting room at the jail drew its

---

[1]After initially being booked for robbery, defendant was rebooked for murder Saturday night, May 23, 1970.

[2]Pursuant to defendant's request, the record on appeal was augmented to include the exhibits introduced at the hearings on the motions to suppress. According to the transcript of the tape recording of the conversation between defendant and his wife, the language in the affidavit is not a verbatim recitation of what they said. It does, however, accurately reflect the gist of what was said.

power from the lighting system in the police building. The system was not tied in to any public telephone system and could not be used for any purpose but communication between prisoners and their visitors. The visitors' room was completely separate from the attorney-prisoner interview room.

Mrs. Santos testified that she was placed under arrest by Officer Fox as soon as she left the visitors' room on a charge involving the hiding of evidence. She was told that anything she said could be used against her, but was not advised that she had a right to an attorney.[3] She admitted that after her husband told her that the phones were bugged she no longer felt that her conversation with him was private.

Defendant testified in connection with the motion to traverse the warrant that there were no other persons present in the visitors' room other than he and his wife at the time of their conversation. It was his intention to communicate with her confidentially. He had heard that the police sometimes tapped the phones and suspected that they might have done so, but had no actual knowledge that they had done so and did not intend to give up his right to privacy by conversing with his wife over the intercom.

On this appeal defendant contends that the court erred in refusing to suppress the conversation between defendant and his wife, and in refusing to strike those portions of the affidavit in support of the search warrant relating to that conversation as well as the portions relating to Mrs. Santos' conversation with Officer Fox, without which, it is contended, the affidavit would have been insufficient. ■ Defendant challenges the monitoring of his conversation with his wife on numerous grounds, the first being that it violated the federal statute regulating electronic surveillance (18 U.S.C. §§ 2510-2520). The statute purports to regulate the interception of wire and oral communications, which are defined as follows: "(1) 'wire communcation' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications;

"(2) 'oral communication' means any oral communcation uttered by a person exhibiting an expectation that such communication is not subject to

---

[3]Fox denied that Mrs. Santos was under arrest at the time he talked to her. He admitted meeting her in the hallway after she left the visitors' room and transporting her from Parker Center to the Rampart Division police station where the interview took place during which she disclosed the existence of the gun in the apartment.

402

interception under circumstances justifying such expectation; . . ." (18 U.S.C. § 2510.)

The conversation between defendant and his wife did not meet the statutory definition of a "wire communication" since it involved no facility furnished or operated by a common carrier. Furthermore, the court below found that neither defendant nor his wife had an expectation of privacy at the time they conversed and that an expectation of privacy under the circumstances would not have been reasonable. These findings have ample support in the record. The conversation thus was outside the statutory definition of "oral communication" as well. The federal regulatory legislation therefore does not apply. (Cf. *Halpin* v. *Superior Court,* 6 Cal.3d 885 [101 Cal.Rptr. 375, 495 P.2d 1295]; see also, Senate Report 1097, 2 U.S. Code Cong. & Admin. News (1968) p. 2178.)[4]

Defendant next contends that the monitoring of his conversation with his wife violated the rights guaranteed him by the Fourth and Fourteenth Amendments to the United States Constitution. ■ It has repeatedly been held, however, that electronic surveillance of conversations between jail inmates and their visitors does not transgress the constitutional prohibition against unreasonable searches and seizures. (*Lanza* v. *New York,* 370 U.S. 139 [8 L.Ed.2d 384, 82 S.Ct. 1218]; *People* v. *Califano,* 5 Cal. App.3d 476 [85 Cal.Rptr. 292].) In *Halpin* v. *Superior Court, supra,* 6 Cal.3d 885, 900, footnote 21, the Supreme Court indicated that it may wish in the future to reassess that rule. While we can conceive of situations in which jail inmates might set forth a strong claim to privacy which might meet with a sympathetic response, the instant case does not present such a situation, precisely because defendant and his wife knew their conversation was being overheard but chose to converse nonetheless. ■ Electronic surveillance does not constitute an unwarranted invasion of privacy when there is no subjective expectation that the monitored conversation will be private. (*Katz* v. *United States,* 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507].)

■ The parties' realization at the time they spoke that their conversation was being monitored disposes also of defendant's contention that the conversation was protected by the confidential marital communications privilege. (Evid. Code, § 980.) Moreover, the privilege does not cover com-

---

[4]Although there is an indication in *Halpin* that the Supreme Court might, in some future unspecified situation, find that the federal preemption extends beyond the specific area delineated in the statutory definitions of "wire communication" and "oral communication" (*Halpin* v. *Superior Court, supra,* 6 Cal.3d 885, 889, fn. 17), we do not believe that the preemption applies to a situation such as the one presented here where the parties are aware their conversation is being overheard.

munications made to enable the other to commit a crime (Evid. Code, § 981), destruction or concealment of evidence being a crime. (Pen. Code, § 135.)

■ Defendant's final argument with respect to the admissibility of his conversation with his wife. is that it should have been suppressed because his arraignment was not timely. He is in error in computing the time limits prescribed for arraignment. Defendant was arrested Saturday, May 23, 1970. He conversed with his wife Tuesday, May 26, 1970. He was arraigned the following morning, May 27, 1970. Section 825 of the Penal Code provides, in pertinent part, that "[t]he defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; provided, however, that when the two days prescribed herein expire at a time when the court in which the magistrate is sitting is not in session, such time shall be extended to include the duration of the next regular court session on the judicial day immediately following."

Since Saturday and Sunday are judicial holidays, the two-day period did not commence with respect to defendant until Monday and did not expire until midnight Tuesday. Since court was not then in session, defendant's arraignment Wednesday morning was entirely proper. (*People* v. *Lee*, 3 Cal.App.3d 514, 521 [83 Cal.Rptr. 715].)

Defendant contends that the court was required to suppress the conversation between his wife and Officer Fox because it violated the rights guaranteed to her by *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Defendant, however, lacks standing to assert violations of the Fifth and Sixth Amendment rights of others. (*People* v. *Varnum*, 66 Cal.2d 808, 812-813 [59 Cal.Rptr. 108, 427 P.2d 772].)

The court acted properly in refusing to strike any portion of the affidavit in support of the search warrant. That affidavit was clearly sufficient for the issuance of the warrant.

The judgment is affirmed.