[L.A. No. 29973. In Bank. Nov. 16, 1972.]

JERALD DOUGLAS NORTH, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

302

## COUNSEL

Patrick H. Maloy, Public Defender, and B. J. Bjork, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Byron C. Morton, District Attorney, and Gary Scherotter, Chief Deputy District Attorney, for Real Party in Interest.

## OPINION

**BURKE, J.**—Petitioner North is charged with kidnapping and assault with a deadly weapon. Pursuant to Penal Code section 1538.5, petitioner moved the superior court to suppress certain evidence linking him to the crimes charged. His motion was denied and he now seeks mandate to review that denial. (Pen. Code, § 1538.5, subd. (i).) We have concluded that petitioner's motion was properly denied with respect to evidence obtained following a seizure of petitioner's automobile subsequent to his arrest. We further hold, however, that evidence of a "jailhouse" communication between petitioner and his wife which was secretly tape-recorded by police officers should have been ordered suppressed as an impermissible invasion of marital privacy. Accordingly, mandate should issue with respect to such evidence.

According to evidence presented at the preliminary hearing, the victim, a school girl, told Detective Neesan, the arresting officer, that on October 4, 1971, as she was walking home from school, she was pulled into a car at knifepoint by the driver. According to Neesan, the victim described the car as "a light blue two-door car. She thought it was a Ford fastback. . . ." The victim indicated that the car was "higher" than ordinary, had two front bucket seats separated by a center console containing a gear shift and glove box, and was equipped with what appeared to be custom carpeting of a "shag type, with long pile, possibly multi-colored yellow and brown."

Following the alleged incident, the officers showed the victim a series of 13 photographs, from which she selected 2 persons as possible suspects; petitioner was one of the suspects she chose. Detective Neesan had known petitioner and was aware that he had been arrested on two prior occasions involving female victims "picked up in a vehicle while they were on the street." Neesan obtained and drove to petitioner's address where he observed a vehicle (a light blue two-door 1964 Ford) matching the description given by the victim. Neesan then determined that the vehicle was registered to a "female subject" but that a transfer notice was on file dated July 29, 1971. Neesan next asked the victim to review a police "mug book" containing photographs of automobiles and to try and pick out the suspect vehicle. She picked out a 1964 Ford as the car within which she had been abducted.

On October 5, at 8:30 p.m., Neesan drove back to petitioner's residence and arrested petitioner inside his apartment. Petitioner's wife was also present in the apartment. Petitioner asked Neesan if he could give his car keys to her, but Neesan refused since the car was to be towed to the police station. Later that night, the car was examined for fingerprints and various

tests made and measurements taken. Although the fingerprints taken at this time were "negative," subsequent tests made on October 7, disclosed "positive" prints of the victim. The October 5, tests did indicate that the left rear tire was similar in design to the impression left at the crime scene, and that the car's "wheel span" matched measurements taken at the scene. Apparently, examination of the vehicle turned up additional evidence linking petitioner with the crime. No search warrant was obtained by the officers who seized and examined petitioner's car.

On October 6, petitioner's wife visited petitioner at the Palm Springs Police Department where he was incarcerated. This visit, which occurred during ordinary visiting hours, took place in Detective Neesan's own office, which was in the same building as the jail. According to Neesan, it is a frequent and normal practice to permit such visits to take place in a detective's office. Neesan was present during the initial "contact" between petitioner and his wife; he then left the room and closed the door behind him. The subsequent five-minute conversation between petitioner and his wife was secretly monitored and tape-recorded.

Following his arraignment, petitioner moved the superior court to suppress (1) all evidence obtained as a result of the seizure and examination of his car; and (2) the tape-recorded conversation with his wife. The court denied his motion in its entirety.

### 1. *The Seizure and Subsequent Examination of Petitioner's Car*

The People rely primarily upon our decision in *People* v. *Teale,* 70 Cal. 2d 497 [75 Cal.Rptr. 172, 450 P.2d 564], wherein we upheld the validity of a seizure and subsequent examination of a vehicle under similar circumstances. In *Teale,* defendant sought to exclude incriminating evidence derived from a scientific examination of the car in which the victim had been shot. F.B.I. officers arrested defendant in his car and thereupon seized, locked and stored the car until California authorities were able to examine it 10 days later. A subsequent scientific examination of the car, performed without the authority of a search warrant, indicated that the victim had been in the car at the time he was shot.

Defendant in *Teale* contended that the police examination of the car constituted an unreasonable search and seizure. We concluded otherwise. First, we noted that the automobile itself was properly seized following defendant's arrest "as evidence connecting defendant with the alleged crimes" and that "it is plainly within the realm of police investigation to subject objects properly seized to scientific testing and examination [citation] . . . ." (70 Cal.2d at p. 508.) Next, we explained that the cases had already acknowledged the implication that "when the police lawfully

seize a car which is itself *evidence* of a crime rather than merely a container of incriminating articles, they may postpone searching it until arrival at a time and place in which the examination can be performed in accordance with sound scientific procedures." (70 Cal.2d at p. 508; see *People* v. *Talbot,* 64 Cal.2d 691 [51 Cal.Rptr. 417, 414 P.2d 633]; *People* v. *Miller,* 245 Cal.App.2d 112 [53 Cal.Rptr. 720]; *Johnson* v. *State,* 238 Md. 528 [209 A.2d 765].)

We concluded by setting forth the following principle "distilled" from the foregoing cases: "When officers, incidental to a lawful arrest, seize an automobile or other object in the reasonable belief that such object *is itself evidence* [fn. omitted] of the commission of the crime for which such arrest is made, any subsequent examination of said object undertaken for the purpose of determining its evidentiary value does not constitute a 'search' within the meaning of the Fourth Amendment. Thus, that evidence in the instant case which was obtained as a result of the criminalist's examination of Mrs. Chapman's automobile was properly admissible." (70 Cal.2d at p. 511.)

 Here, as in *Teale,* petitioner's car was seized, contemporaneous with petitioner's arrest, as evidence of the alleged kidnapping; the car was believed to be the very instrumentality used to commit the kidnapping.[1] Of course, since petitioner was arrested in his apartment, a *search* of the car could not have been made as "incident to arrest"; such searches must be limited to the area within the suspect's immediate control. (E.g., *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) We are concerned, however, with a *seizure* of evidence in plain sight of arresting officers rather than a search for such evidence. As is made clear by its reliance upon such cases as *People* v. *Talbot, supra,* 64 Cal.2d 691, the court in *Teale* (a pre-*Chimel* case) did not intend to limit the seizure of evidence in plain view only to those objects within the immediate reach of the person arrested.

On the contrary, this court has recognized an important exception to the rule announced in the *Chimel* case, *supra,* namely, that "objects falling in plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." (*People* v. *Sirhan,* 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121]; *People* v. *Block,* 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961].) Thus, in

---

[1]As the seizure and examination of the vehicle was proper under *Teale,* we need not consider whether that seizure might also have been proper upon the ground that the officers had probable cause to believe that the vehicle contained evidence of the kidnapping. (See *People* v. *McKinnon,* 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097].)

*Block, supra,* we upheld the seizure of contraband found in plain view of officers conducting a post-arrest house search for additional suspects. Although the instant case involves the seizure of evidence of an offense rather than contraband itself, the cases no longer recognize a distinction between contraband and "mere evidence" for purposes of applying the Fourth Amendment. (*Warden* v. *Hayden,* 387 U.S. 294, 300-308 [18 L.Ed.2d 782, 788-793, 87 S.Ct. 1642]; see *Harris* v. *United States,* 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992] [seizure of vehicle registration card in plain sight]; *People* v. *Sirhan, supra,* 7 Cal.3d 710, 742-744 [seizure of envelope in plain sight].) Petitioner's car was parked on a public street, in plain view of the arresting officers. Under *Teale* and other authorities cited above, the officers properly seized the car as evidence of the alleged kidnapping.

Petitioner contends, however, that our holding in *Teale* must be reexamined and modified in the light of the subsequent decision of the United States Supreme Court in *Coolidge* v. *New Hampshire,* 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022]. *Coolidge,* properly understood, leaves *Teale* undisturbed.

In *Coolidge,* the police arrested a murder suspect in his house and thereupon seized his automobile and searched it later ′at the police station, finding physical evidence that the victim had been inside the vehicle. The record disclosed that the police had known for some time of the probable role of the car in the crime, and there were no "exigent circumstances" to justify a warrantless search. Accordingly, the plurality opinion of Justice Stewart concluded that the seizure could not be justified on the theory that the vehicle was itself the "instrumentality" of the crime and was discovered "in plain view" of the officers. Justice Stewart was of the opinion that the "plain view" doctrine is applicable only to the *inadvertent* discovery of incriminating evidence. (403 U.S. at pp. 464-473 [29 L.Ed.2d at pp. 581-587].)

If the plurality opinion in *Coolidge* were entitled to binding effect as precedent, we would have difficulty distinguishing its holding from the instant case, for the discovery of petitioner's car was no more "inadvertent" than in *Coolidge.* However, that portion of Justice Stewart's plurality opinion which proposed the adoption of new restrictions to the "plain view" rule was signed by only four members of the court (Stewart, J., Douglas, J., Brennan, J., and Marshall, J.). Although concurring in the judgment, Justice Harlan declined to join in that portion of the opinion (see 403 U.S. at p. 491 [29 L.Ed.2d at p. 597]), and the four remaining justices expressly disagreed with Justice Stewart on this point (*id.* at pp. 505-510 [29 L.Ed.2d

at pp. 605-608], dis. opn. by Black, J., joined by Burger, C. J., and Blackmun, J.; *id.* at p. 522 [29 L.Ed.2d at p. 615], dis. opn. by White, J., joined by Burger, C. J.).

It follows that the "plain view" issue raised by the plurality opinion was in fact considered by an equally divided court, and hence was not actually decided in *Coolidge*. (See *People* v. *McKinnon, supra,* 7 Cal.3d at p. 911.) ■ As stated in *McKinnon,* involving a different aspect of the *Coolidge* plurality opinion, "under settled doctrine, the judgment of an equally divided United States Supreme Court 'is without force as precedent.' [Citation.] Thus we are bound to apply the [vehicle search] rule according to our present understanding of its scope." (*Id.*) ■ We conclude that our decision in *Teale* correctly sets forth the present law regarding warrantless seizures of evidentiary items in plain view of arresting officers, and that the superior court in the instant case properly denied petitioner's motion to suppress evidence derived from the subsequent police examination of petitioner's vehicle.

### 2. *The Tape-recorded Conversation*

■ Petitioner contends that the recorded conversation with his wife should have been suppressed as the product of an unreasonable search and seizure, a contention properly within the scope of Penal Code section 1538.5 (see *People* v. *Coyle,* 2 Cal.App.3d 60 [83 Cal.Rptr. 924]). We have held that one appropriate test for determining the validity of a particular search or seizure made without the prior issuance of a warrant is whether the defendant had exhibited a reasonable expectation of privacy, and if so, whether that expectation was violated by an unreasonable governmental intrusion. (*People* v. *Bradley,* 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards,* 71 Cal.2d 1096, 1104-1105 [80 Cal. Rptr. 633, 458 P.2d 713].) The foregoing principle was adopted from language in *Katz* v. *United States,* 389 U.S. 347, 353 [19 L.Ed.2d 576, 583, 88 S.Ct. 507], wherein the United States Supreme Court, in an eavesdropping case, held that "The Government's activities in electronically listening to and recording the petitioner's words [in a public telephone booth] violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment," and that in the absence of prior judicial authorization the search and seizure were unreasonable.

In *Katz,* the defendant was held to have a reasonable expectation of privacy in a public telephone booth. On the other hand, prior California cases have uniformly held that an inmate of a jail ordinarily has no right of privacy. (See *People* v. *Lopez,* 60 Cal.2d 223, 248 [32 Cal.Rptr. 424,

384 P.2d 16]; *Halpin* v. *Superior Court,* 6 Cal.3d 885, 900, fn. 21 [101 Cal.Rptr. 375, 495 P.2d 1295], and authorities cited.) ■ The rationale underlying this general rule is based upon a policy favoring the use by jail authorities of reasonable security measures. "A man detained in jail cannot reasonably expect to enjoy the privacy afforded to a person in free society. His lack of privacy is a necessary adjunct to his imprisonment. . . . 'To censor and in certain circumstances to forbid communication to and from a prison is inherent in its administration. Such authority is necessary to protect against escape.'" *(People* v. *Morgan,* 197 Cal.App. 2d 90, 93 [16 Cal.Rptr. 838].)

None of the prior cases, however, have involved confidential marital communications, and consequently the courts have not yet had occasion to consider the issue of jailhouse privacy in the light of the strong policy favoring "complete freedom of communication" between husband and wife. (See Comment, 57 Cal.L.Rev. 1182, 1229.)

This court has previously acknowledged an inmate's right to privacy "insofar as concerns consultation *with his attorney* in a room designated for that purpose . . . ." *(People* v. *Lopez, supra,* 60 Cal.2d 223, 248, italics added.) Moreover, it is a felony in this state to eavesdrop upon or record a conversation between a prisoner (or other person in legal custody) and his attorney, religious advisor or licensed physician. (Pen. Code, § 636.)[2] ■ Thus, California law does recognize some exceptions to the broad rule that a prisoner has no right of privacy in a jail, exceptions which focus upon the special relationship between the communicants. As stated by the United States Supreme Court in *Lanza* v. *New York,* 370 U.S. 139, 143-144 [8 L.Ed.2d 384, 387-388, 82 S.Ct. 1218], acknowledg-

---

[2]Section 636 is one of several statutory provisions enacted in 1967 to protect against invasions of privacy through eavesdropping and wiretapping. (See Pen. Code, § 630 et seq.) For example, section 632 forbids eavesdropping upon or recording any "confidential communication," as defined therein, and declares inadmissible any evidence obtained as a result of such eavesdropping or recording. Section 632 does not, however, avail petitioner herein, for its provisions are inapplicable to "any communication which [law enforcement officers] could lawfully overhear or record prior to the effective date of this chapter [i.e., 1967]." (Pen. Code, § 633.) Since pre-1967 law did not forbid officers from eavesdropping upon or recording communications between a person in legal custody and his spouse (see former Pen. Code, § 653i), the prohibitions of section 632 would not apply.

As neither petitioner nor the People has relied upon the provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510-2520), we do not consider whether that act might provide a further basis for suppressing the conversation recorded by the police herein, or to what extent, if any, the act's provisions have preempted the provisions of Penal Code section 630 et seq., as applied to the interception of oral communications. (Cf. *Halpin* v. *Superior Court, supra,* 6 Cal.3d 885, 896-900.)

ing these exceptions: "In prison, official surveillance has traditionally been the order of the day. [Fn. omitted.] Though *it may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection,* [fn. omitted] there is no claimed violation of any such special relationship here [between defendant and his brother]." (Italics added.)[3]

In California, the law has "endowed with particularized confidentiality" the relationship of attorney-client (Evid. Code, § 950 et seq.), physician-patient (Evid. Code, § 990 et seq.), psychotherapist-patient (Evid. Code, § 1010 et seq.), *and husband-wife* (Evid. Code, § 980 et seq.),[4] by creating a statutory privilege in favor of the client, patient, penitent or husband/wife to refuse to disclose, *and to prevent another from disclosing,* a confidential communication with his attorney, physician, psychotherapist, clergyman or spouse. As noted in the comment of the Law Revision Commission to section 980, "The [marital communication] privilege may be asserted to prevent testimony by anyone, *including eavesdroppers.*" (Evid. Code, § 980, comment; italics added.)

Further a communication between such persons "is presumed to have been made in confidence and the opponent of the claim of privilege has the burden to establish that the communication was not confidential." (Evid. Code, § 917; see 8 Wigmore, Evidence, § 2336 [McNaughton rev. ed. 1961]; *Blau* v. *United States,* 340 U.S. 332, 333-335 [95 L.Ed. 306, 308-309, 71 S.Ct. 301].)

Thus, if the conversation between petitioner and his wife was "made in confidence," the substance of that conversation would be privileged and inadmissible under section 980. The People evidently take the position that, by reason of the general rule set forth above, no jailhouse communication can ever be "made in confidence." We reject that position for, as stated in a recent case, "it is conceivable that in a given case the police

---

[3]See also Schwartz, *The Legitimation of Electronic Eavesdropping: The Politics of "Law and Order,"* 67 Mich.L.Rev. 455, 466-468; Comment, *supra,* 57 Cal.L.Rev. 1182, 1228-1229; American Bar Association Project on Minimum Standards for Criminal Justice: Standards Relating to Electronic Surveillance, sections 5.10, 5.11; and Commentary, pages 156-158.

[4]Section 980 provides that "Subject to Section 912 [waiver of privilege] and except as otherwise provided in this article, a spouse . . . has a privilege . . . to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife." Under section 981, the privilege is unavailable if the communication was made "in whole or in part, to enable or aid anyone to commit or plan to commit a crime or a fraud."

might make representations to even an incarcerated defendant that would cause him to have a right of privacy. ■ As the Supreme Court stated in *Katz* v. *United States, [supra,]* 389 U.S. 347, 351 . . . , 'What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.' " (*People* v. *Blair,* 2 Cal.App.3d 249, 256 [82 Cal.Rptr. 673]; see Comment, *supra,* 57 Cal.L.Rev. at pp. 1206-1208; but see *People* v. *Stadnick,* 207 Cal.App.2d 767, 772-774 [25 Cal.Rptr. 30, 99 A.L.R.2d 766].)

Of course, ordinarily the fact that a communication is made "under circumstances where others could easily overhear is a strong indication that the communication was not intended to be confidential and is, therefore, unprivileged. [Citations.]" (Evid. Code, § 917, comment, *supra;* see *People* v. *Santos,* 26 Cal.App.3d 397, 402 [102 Cal.Rptr. 678]; *People* v. *Cox,* 263 Cal.App.2d 176, 188 [69 Cal.Rptr. 410].)[5] ■ In view of the general rule that an inmate of a jail or prison has no reasonable expectation of privacy, it would follow that an ordinary jailhouse conversation between spouses could not be deemed to have been "made in confidence," as required by Evidence Code section 980 to establish the privilege.

In the instant case, however, the conversation occurred in a detective's private office under circumstances which strongly indicate that petitioner and his wife were lulled into believing that their conversation would be confidential. Although the record does not disclose whether or not Neesan made any representations to that effect, his admitted conduct spoke as clearly as words—first by surrendering to petitioner and his wife Neesan's own private office so that they might converse and then by exiting and shutting the door, leaving them entirely alone. Certainly, nothing in Neesan's actions indicated that petitioner's conversation would be monitored.

---

[5]In *Santos,* defendant was arrested on suspicion of robbery and later "rebooked" for murder. Subsequently, his wife visited him in the jail visiting room, and they conversed by means of a telephone intercom system. During the monitored conversation, defendant stated, "I'm in for murder." His wife asked whom he had killed. Defendant responded, "Careful, they've got these phones bugged." He then whispered what sounded like "get rid of it." His wife replied, "Okay, I'll sell it." Defendant whispered, "Be quiet." His wife said, "No, no, I meant the TV."

Defendant contended that the conversation with his wife was confidential and therefore privileged, and that the monitoring of his conversation violated his constitutional rights. The Court of Appeal properly rejected the contention, holding, inter alia, that "Electronic surveillance does not constitute an unwarranted invasion of privacy when there is no subjective expectation that the monitored conversation will be private. [Citation.] [Par.] The parties' realization at the time they spoke that their conversation was being monitored disposes also of defendant's contention that the conversation was protected by the confidential marital communications privilege. (Evid. Code, § 980.)" (26 Cal.App.3d at p. 402.)

The foregoing circumstances, coupled with the statutory presumption that a conversation between spouses is presumed to have been made in confidence (Evid. Code, § 917, *supra*), constituted a sufficient showing by petitioner to establish a reasonable expectation of privacy.

We emphasize that nothing in our opinion should be deemed a disapproval of the common practice of monitoring inmates' conversations with others, including their spouses, in visiting rooms or similar places. That practice seems reasonably necessary in order to maintain jail security and (with the exceptions set forth in Pen. Code, § 636, *supra*), is not proscribed by law.[6] But jail security can be adequately maintained without resorting to the deliberate creation of a situation in which marital privacy could reasonably be expected to exist. We cannot sanction the device of secretly exploiting marital confidences, as was done under the circumstances of this case, for the sole purpose of gathering possibly incriminating evidence. Such a device constitutes, we believe, an "unreasonable governmental intrusion" of the sort condemned in our prior cases.

We conclude that, under the circumstances of this case, petitioner had a reasonable expectation that his conversation was, and would remain, private. Accordingly, the "search" conducted by the officers by means of the tape recording was an unlawful one, and the superior court should have suppressed all evidence obtained therefrom under Penal Code section 1538.5.

Let a writ of mandate issue to the superior court commanding further proceedings consistent with this opinion.

Mosk, J., concurred.

**WRIGHT, C. J.,** Concurring and Dissenting.—I concur with the majority to the extent that they hold that the arresting officer properly seized the vehicle which had been used by petitioner as an instrumentality of the alleged crime. There can be no question that the vehicle is itself evidence of the commission of the crime within the meaning of *People* v. *Teale* (1969) 70 Cal.2d 497 [75 Cal.Rptr. 172, 450 P.2d 564]. Although it was parked on a public street and not within petitioner's immediate control at the time

---

[6]As noted above (fn. 2), nothing in the Penal Code provisions regarding invasion of privacy (Pen. Code, § 630 et seq.) expressly forbids eavesdropping upon or recording a jailhouse communication between spouses, and the marital communications privilege (Evid. Code, § 980) only affects the admissibility of such communications. Note, however, the proscriptions of the Omnibus Crime Control and Safe Streets Act, *supra*, footnote 2.

of his arrest (see *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]), the officer committed no trespass when he observed it in plain view and seized possession. (See *People* v. *Block* (1971) 6 Cal. 3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961].) Speculation as to the meanings to be given to the various views expressed in *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022] fails to support a conclusion that a majority of the members of the high court would hold the seizure in the instant case to infringe the Fourth Amendment's prohibition against unreasonable searches and seizures, and certainly I cannot reach that conclusion.

I cannot, however, agree with the majority holding which requires the exclusion of the tape-recorded conversation between petitioner and his wife. It is clear that there is no statutory compulsion of exclusion; to the contrary, the Legislature by its failure to proscribe the eavesdropping upon or recording of prisoner-spouse communications while proscribing such activities with respect to other specified prisoner communications (Pen. Code, § 636) has specifically excluded prisoner-spouse communications from the protected class. There is likewise no sufficient constitutional ground upon which we could or should depart from the well-established rule that a prisoner in custody has no reasonable expectation of privacy. I agree with the views expressed by Sullivan, J. in his dissenting opinion insofar as they relate to the taped recordings.

As the motion to suppress evidence was properly denied in its entirety, I would deny the writ.

McComb, J., concurred.

**TOBRINER, J.,** Concurring and Dissenting.—The present case presents two issues: (1) the admission of evidence obtained by the police examination of defendant's automobile; and (2) the admission of the police tape recordings of the conversation between defendant and his wife at the jail. I believe that in both instances the trial court should have suppressed the proffered evidence.

On the issue of the evidence acquired through examination of the automobile, I agree with the conclusion and reasoning of Justice Sullivan. In my opinion, the suppression of this evidence is required by the decision of the United States Supreme Court in *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022]. Despite the divergent views expressed by the justices in that case, and the absence of a single majority opinion, the fact remains that the United States Supreme Court ordered

suppression of the evidence obtained by examination of Coolidge's car. Unless we can find and articulate some reasonable distinction between the facts of *Coolidge* and of the present case, we must conclude that the Supreme Court would also exclude the evidence at issue in the present case.

In both *Coolidge* and the instant case the crime was committed inside the defendant's automobile. In both cases the defendant was arrested inside his home; his car was parked outside the residence and in plain sight from the public streets. In *Coolidge* the police had an invalid search warrant; here they had no warrant at all. In both cases the police impounded the cars, examined them meticulously, and through this examination discovered evidence introduced against defendant. In both cases the defendant objected to the introduction of the evidence, and in both the state sought to uphold the evidence on the ground that the automobile was evidence of the crime in plain sight from public vantage.

Justice Burke contends, in effect, that because *Coolidge* did not yield a clear majority opinion, that the decision of the Supreme Court in that case may be disregarded by this court. I would maintain to the contrary, that when a case comes before us which is in all material facts identical to *Coolidge,* we must treat *the result* reached in *Coolidge* as controlling, and exclude the evidence in question. I have stated briefly the material facts of this case and of *Coolidge* and can find no reasonable basis to distinguish the two cases.

With respect to the admissibility of the tape recordings of the conversation between defendant and his wife, I agree with the conclusion and reasoning of Justice Burke.

Peters, J., concurred.

**SULLIVAN, J.**—I dissent. Curiously, my esteemed colleagues of the majority would permit the introduction of evidence obtained as a result of the police examination of defendant's Ford automobile but, on the other hand, would exclude the police tape recordings of the conversation between defendant and his wife at the Palm Springs jail. I respectfully suggest that they thus err twice. In my judgment the seizure and subsequent examination of defendant's car was unlawful; the tape recording of the conversation, however, was constitutionally permissible.

As to the seizure of the car, I must emphasize at the outset that the majority erroneously rely upon our decision in *People* v. *Teale* (1969) 70 Cal.2d 497 [75 Cal.Rptr. 172, 450 P.2d 564] to support the action of the police. Crucial to our holding in *Teale* was the fact that the auto-

mobile there involved was seized *incident to the lawful arrest* of the defendant, who was placed under arrest while in the act of entering it. Although in the case at bench the majority note that defendant's car was not seized incident to his arrest, as indeed the facts make unquestionably clear, I find confounding their attempt to extract from *Teale* authority to uphold the seizure on the basis that it was a seizure of evidence in plain view. That the automobile was in plain view when the defendant in *Teale* was arrested never became relevant to our determination that its seizure and subsequent examination for evidence of the crime were legal. Nor did we hold in *Teale* that, absent the circumstance of the defendant's contemporaneous arrest, his automobile could have been seized anyhow on the mere ground that it was in plain view. All reference to *Teale,* it seems to me, is simply extraneous.

A brief reference to our unanimous holding in *Teale* demonstrates the error of the majority's position on this issue. After referring to our unanimous opinions in *People* v. *Webb* (1967) 66 Cal.2d 107 [56 Cal. Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708] and *People* v. *Williams* (1967) 67 Cal.2d 226 [60 Cal.Rptr. 472, 430 P.2d 30], and to *Johnson* v. *State* (1965) 238 Md. 528 [209 A.2d 765], we said in *Teale:* "The principle which we distill from the foregoing cases, and which is applicable to the instant case, is simply this: When officers, *incidental to a lawful arrest,* [italics added] seize an automobile or other object in the reasonable belief that such object *is itself evidence* [fn. omitted; original italics] of the commission of the crime for which such arrest is made, any subsequent examination of said object undertaken for the purpose of determining its evidentiary value does not constitute a 'search' within the meaning of the Fourth Amendment." (70 Cal.2d at p. 511.)

To embrace *Teale,* as do the majority, for a principle for which it does not stand, and thereafter to assert that the plurality opinion in *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022], rehearing denied 404 U.S. 874 [30 L.Ed.2d 120, 92 S.Ct. 26], does not detract from that principle, lends no assistance to the majority's position. As I explain *infra,* the simple fact is that there is no support in *Coolidge* or other decisions of the high court for the seizure of the car on the mere basis that it is in plain view. I would respectfully suggest to the majority that they are using the unanimous holding of this court in *Teale* for a purpose which was neither expressed nor intended.

The People attempt to justify the seizure of the car on the ground that it was evidence of the crime[1] which was in plain sight. As I have said, the

---

[1]"[T]he very instrumentality used to commit the kidnapping." (*Ante,* p. 306.)

majority in essence state that *Teale* supports this proposition (it does *not*) and that *Teale* is in harmony with *Coolidge*. In plain fact there is no merit to the People's claim, nor can the convoluted *Teale-Coolidge* approach of the majority provide any.

As is well stated by Mr. Justice Stewart in *Coolidge* v. *New Hampshire, supra*, 403 U.S. 443, 468 [29 L.Ed.2d 564, 584], "plain view *alone* is never enough to justify the warrantless seizure of evidence." (Original italics.) The "plain view" doctrine merely allows an officer with a *prior justification* for a search to seize evidence which he inadvertently discovers. (*Id.* at p. 466 [29 L.Ed.2d at p. 583].) After all, "in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure." (*Id.* at p. 465 [29 L.Ed.2d at p. 582]; original italics.) Probable cause alone is not enough. If this exception to the requirement of a warrant were not so limited it would erode entirely the guarantee of the Fourth Amendment.

Detective Neesan discovered the automobile in plain view and had probable cause to believe it was connected with the crime under investigation; what he lacked, however, was either a warrant or exigent circumstances.[2] Since he had seen the car the day before he seized it, it cannot be argued that he found it inadvertently when he went to arrest defendant. The seizure is not lawful simply because the automobile was in plain view on the street.

Of course I recognize that there is some dispute whether the "plain view" section (II-C) of the *Coolidge* opinion is binding upon us, because it reflects the consensus of only a plurality of the Supreme Court. However, Mr. Justice Harlan, whose concurrence produced the fifth vote for the majority decision, specifically concurred with section II-D of Justice Stewart's opinion. That section is addressed primarily to Mr. Justice White's dissenting opinion, which "marshals the arguments that can be made against our interpretation of the 'automobile' and 'plain view' exceptions to the warrant requirement." (*Coolidge* v. *New Hampshire, supra*, 403 U.S. 443, 473 [29 L.Ed.2d 564, 587].) Such reference and several others to part II-C (*id.* at p. 482 [29 L.Ed.2d at p. 592]) of the plurality opin-

---

[2]The day of the incident Detective Neesan, investigating the complaint, spotted a car matching the description provided by the victim in front of defendant's residence. Later that day the victim picked out the same make and model vehicle from a police "mug book." But not until the next evening at 8:30 p.m. did Neesan return to defendant's house to effect an arrest and seize the automobile. From the full-day delay between finding the suspect vehicle and its seizure, we may reasonably assume the absence of any exigent circumstances.

ion suggest that Justice Harlan's limited concurrence sweeps more broadly than the majority would allow.

But apart from these considerations, the ineluctable fact remains that seizure of evidence of the crime on the mere basis that it is in plain view has no support in our decisional law. Justice Stewart has made this clear, and the majority have not directed our attention to any precedent to the contrary. *People* v. *Sirhan* (1972) 7 Cal.3d 710, 739 [102 Cal.Rptr. 385, 497 P.2d 1121], cited by the majority, does not rest upon such a ground, but upon exigent circumstances; *People* v. *Block* (1971) 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961], is actually in accord with Justice Stewart's explanation.

I now turn to the issue of the recorded conversation between defendant and his wife. In concluding that it should have been suppressed, the majority import the law of privilege into the law of search and seizure. They fail to distinguish between the reasonableness of an expectation of privacy in a particular place, here the detective's office at the Palm Springs jail, and the "expectation" of privilege in marital communications.

I have no quarrel with the majority's explanation that the test for the admission in evidence of the recording is whether or not the defendant had a reasonable expectation of privacy which was violated by governmental intrusion. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 84 [81 Cal. Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1104-1105 [80 Cal.Rptr. 633, 458 P.2d 713]; see *Katz* v. *United States* (1967) 389 U.S. 347, 350-352 [19 L.Ed.2d 576, 581-583, 88 S.Ct. 507].) However, I fail to see the logic of their reasoning that, because husbands and wives expect their communications to each other to be protected by a testimonial privilege (Evid. Code, § 980 et seq.), therefore *wherever* husbands and wives communicate with each other they must have a reasonable expectation of privacy from third party eavesdroppers. It is the *place* of the communication, not the *relationship of the communicating parties* which is relevant to our inquiry.

The majority's result breaks sharply from a long line of accepted authority holding that persons in custody ordinarily have no reasonable expectation of privacy. (*People* v. *Lopez* (1963) 60 Cal.2d 223, 248 [32 Cal. Rptr. 424, 384 P.2d 16], cert. den. (1964) 375 U.S. 994 [11 L.Ed.2d 480, 84 S.Ct. 634], rehg. den. 376 U.S. 939 [11 L.Ed.2d 660, 84 S.Ct. 794]; *People* v. *Jones* (1971) 19 Cal.App.3d 437, 449 [96 Cal.Rptr. 795]; *People* v. *Califano* (1970) 5 Cal.App.3d 476, 481 [85 Cal.Rptr. 292]; *People* v. *Blair* (1969) 2 Cal.App.3d 249, 256 [82 Cal.Rptr. 673]; *People* v. *Hiser* (1968) 267 Cal.App.2d 47, 60-61 [72 Cal.Rptr. 906, 41 A.L.R.3d

1353]; *People* v. *Ashford* (1968) 265 Cal.App.2d 673, 686 [71 Cal. Rptr. 619]; *People* v. *Chandler* (1968) 262 Cal.App.2d 350, 355-356 [68 Cal.Rptr. 645], cert. den. (1969) 393 U.S. 1043 [21 L.Ed.2d 591, 89 S.Ct. 670]; *People* v. *Petker* (1967) 254 Cal.App.2d 652, 654 [62 Cal. Rptr. 215]; *People* v. *Miller* (1967) 252 Cal.App.2d 877, 881, fn. 2 [60 Cal.Rptr. 791]; *People* v. *Apodaca* (1967) 252 Cal.App.2d 656, 659 [60 Cal.Rptr. 782]; *People* v. *Dinkins* (1966) 242 Cal.App.2d 892, 903 [52 Cal.Rptr. 134]; *People* v. *Ross* (1965) 236 Cal.App.2d 364, 376-377 [46 Cal.Rptr. 41]; *People* v. *Boulad* (1965) 235 Cal.App.2d 118, 126 [45 Cal.Rptr. 104], cert. den. (1966) 383 U.S. 915 [15 L.Ed.2d 669, 86 S.Ct. 905]; *People* v. *Bazaure* (1965) 235 Cal.App.2d 21, 34 [44 Cal. Rptr. 831], cert. den. (1966) 384 U.S. 1026 [16 L.Ed.2d 1032, 86 S.Ct. 1951], rehg. den. 385 U.S. 892 [17 L.Ed.2d 125, 87 S.Ct. 21]; *People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 149-150 [40 Cal.Rptr. 100], cert. den. (1965) 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810]; *People* v. *Stadnick* (1962) 207 Cal.App.2d 767, 773-774 [25 Cal.Rptr. 30, 99 A.L.R.2d 766]; *People* v. *Morgan* (1961) 197 Cal.App.2d 90, 93 [16 Cal.Rptr. 838], cert. den. (1962) 370 U.S. 965 [8 L.Ed.2d 830, 82 S.Ct. 1606].) The United States Supreme Court has stated, "it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day. [Fn. omitted.]" (*Lanza* v. *New York* (1962) 370 U.S. 139, 143 [8 L.Ed.2d 384, 387-388, 82 S.Ct. 1218].)

The majority seem to argue that because conversations between prisoners and their attorneys, religious advisors, or licensed physicians are both protected by Penal Code section 636 and are afforded a testimonial privilege (see Evid. Code, §§ 911 et seq., 950 et seq., 990 et seq., 1030 et seq.), the Legislature thereby intended to protect all privileged relationships from the intrusion of prison eavesdropping. But the argument answers itself. By affording the additional protection of a criminal penalty for eavesdropping upon, or recording, a conversation between a prisoner and his attorney, religious advisor, or licensed physician, the Legislature has specifically excluded from the coverage of this statute the prisoner-spouse relationship.

That the recordings were of the prisoner's conversation with his wife, rather than with another relative or a friend, is therefore of no moment. The sole question we must face is whether, on the facts before us, the defendant had a reasonable expectation of privacy.

Measured against an objective standard, I conclude that no reasonable person in defendant's position could have had such an expectation. At the time of the conversation defendant was in custody, charged with the

serious crimes of kidnapping and assault with a deadly weapon. He was held in the jail and upon the visit of his wife was brought to the police area in the same building where he spoke with her in a detective's office. Under such circumstances only a fatuous or naive defendant would close his eyes to the realities and assume that he was no longer in custody or under surveillance and that his jail, like his home, had in some unaccountable way become his castle.

In sum, I would hold that the tape recording of defendant's conversation with his wife was admissible as evidence. No unreasonable search occurred, because defendant, as a prisoner, had no right to expect privacy. The testimonial privilege afforded spouses by section 980 of the Evidence Code does not cast a protective net of privacy over communication between married persons where no such privacy in fact exists.

I would issue the writ of mandate but only to suppress the evidence resulting from the unlawful seizure of defendant's automobile.