[No. B002269. Second Dist., Div. Six. May 7, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS FRANK WOJTKOWSKI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*At the direction of the court, and pursuant to California Rules of Court, rule 976.1, the portion of the opinion certified for publication follows.

COUNSEL

Raymond A. Garcia for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Thomas L. Willhite, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GILBERT, J.**—Defendant Louis Frank Wojtkowski appeals his judgment of conviction of spousal battery, rape, and sodomy entered after a jury trial. (Pen. Code, §§ 273.5, 262, subd. (a), 286, subd. (c).) We affirm the judg-

ment and hold that the trial judge properly admitted tape recordings of defendant's postarrest admissions. [. . .]*

FACTS

When Mrs. Wojtkowski returned home after her evening shift as a nurse's aide, she discovered her husband inebriated. He argued with her for several hours concerning her desire for a divorce. He requested that she have sexual intercourse with him, and when she refused, he became enraged. He unplugged the two house telephones from the wall and threw them outside. He threatened to kill Mrs. Wojtkowski, and then pulled her hair, choked her, threw her on the floor, raped and sodomized her.

Warren Wojtkowski, the couple's nine-year-old son, awoke and heard his mother say "Stop, Lou, stop." He heard his father threaten to kill her. He rose from bed and saw his nude father choking his mother. Warren tried to call his grandmother for assistance, but found the bedroom phone missing. Louis Wojtkowski, the couple's 11-year-old son, heard his mother crying and a thump against the wall.

Several hours later when defendant left for work, Mrs. Wojtkowski called her brother for assistance. She then collected her four children and left the residence to stay with her mother. She returned home three and one-half weeks later when she was confident defendant no longer resided there.

Defendant fled to Illinois the day following the attack. He telephoned Mrs. Wojtkowski several times from Illinois and once from the Ventura County jail after his arrest. The district attorney had counseled Mrs. Wojtkowski to record any telephone conversation with defendant and a detective had installed a recorder on her phone. Mrs. Wojtkowski testified that the police advised her the purposes of the recorder were to locate defendant's whereabouts, alert them to protect her if defendant threatened her, and record defendant's admissions, if any.

During the first three recorded conversations (before defendant's arrest), defendant admitted attacking Mrs. Wojtkowski "because [she] hurt [him] bad mentally," apologized for the attack, and stated it resulted because the contemplated divorce was "more than [he] could handle." He admitted to drinking more than a six-pack of beer that evening. During one call he inquired if Mrs. Wojtkowski was recording the conversation. She replied she was not.

*See footnote, ante, page 1077.

Defendant placed the fourth recorded conversation to Mrs. Wojtkowski from county jail after his arrest. He advised her during this call that his attorney would attack her credibility at trial. This might mean she would be charged with welfare fraud due to past financial indiscretions. If she were tried, convicted, and jailed, he warned that his parents would acquire custody of the couple's four children.[1] Defendant recommended she assert the Fifth Amendment and not testify against him. He stated that his attorney counseled him not to speak with her. He also inquired again if she were taping the call. She replied she was not.

Defendant testified at trial that Mrs. Wojtkowski consented to intercourse but abruptly rejected him, insulted him, and requested a divorce. Angered, he removed the telephones and threw them outdoors. He admitted physically throwing and pushing her but denied choking, raping, or sodomizing her. He testified he believed the tape recordings were altered.

A jury convicted defendant of all counts and the trial judge sentenced him to the eight-year upper term on the sodomy count with a six-year and three-year concurrent sentence on the remaining two counts. Defendant argues on appeal that the trial judge admitted the fourth recorded telephone conversation in violation of his *Miranda* and *Massiah* rights. [. . .]*

### DISCUSSION

 Defendant contends the recording of his conversation with Mrs. Wojtkowski, made from county jail after his arrest, was admitted at trial in violation of his *Miranda* rights.

*Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974] held that the prosecution may not use exculpatory or inculpatory statements, stemming from custodial interrogation of the defendant, unless procedural safeguards had been used to secure defendant's Fifth Amendment privilege against self-incrimination. (*Rhode Island* v. *Innis* (1980) 446 U.S. 291, 297 [64 L.Ed.2d 297, 305, 100 S.Ct. 1682].) The Supreme Court held, however, that any statement offered freely and involuntarily, without compelling influence, is admissible. (*Miranda* v. *Arizona, supra,* p. 478 [16 L.Ed.2d at p. 725].)

---

[1]Defendant: "I don't want to see [the children] with [my parents] and I don't want to see them within a home. I'd like to see them with you, and when I get out, I'd like to have visitation rights and the whole shot. . . ."

Mrs. Wojtkowski: ". . . You have them back off . . ."

Defendant: "All you got to do is tell me, 'Yeah, when I go for the witness, I won't testify against you,' and if I tell them that, they'll back off. They'll drop it."

*See footnote, *ante,* page 1077.

Defendant's argument assumes that his conversation with his wife was an interrogation rather than a volunteered statement. █ Interrogation includes express questioning as well as police words or action likely to elicit an incriminating response. (*Rhode Island* v. *Innis, supra,* 446 U.S. 291, 301 [64 L.Ed.2d 297, 308].) This broad definition prevents police ingenuity in creating methods of indirect questioning. (*Rhode Island,* p. 299, fn. 3 [64 L.Ed.2d p. 307].) Volunteered statements, on the other hand, are unaffected by the *Miranda* holding: "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without benefit of warning and counsel, but whether he can be interrogated." (*Miranda, supra,* 384 U.S. at p. 478 [16 L.Ed.2d at p. 726].)

█ We have reviewed the transcript of defendant's telephone call from jail and conclude his admissions were voluntary and not the result of his wife's conversation. Defendant called Mrs. Wojtkowski to dissuade her from testifying against him. Her few references to the attack were only indignant responses to defendant's suggestion that she should refuse to testify: "So I'm suppose to take the Fifth and let you walk free of raping me and assaulting me and performing sodomy on me; is that right? And Lou goes scot free . . . ." Defendant replied that she consented to the acts, that he didn't recall much of what occurred that evening, and finally, that they change the subject. Rather than being an interrogation, the conversation concerned defendant's efforts to dissuade Mrs. Wojtkowski from testifying, and also included his views on family finances and in-law relationships.

█ Defendant's argument also fails because courts have agreed that questioning by a police agent does not involve "interrogation" as long as the defendant is unaware of the agent's relationship with the government. (Ringel, Search and Seizure, Arrests and Confessions (1984) pp. 27-37.) The premise for these decisions is that the *interplay* of interrogation and custody would "subjugate the individual to the will of his examiner." (*Rhode Island, supra,* 446 U.S. 291, 299 [64 L.Ed.2d 297, 306].) If an individual is unaware of government involvement, he cannot reasonably be thought to experience pressure or coercion.

█ Defendant also asserts that admission of the recording violated his Sixth Amendment right to the assistance of counsel under *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199] and *United States* v. *Henry* (1980) 447 U.S. 264, 274 [65 L.Ed.2d 115, 124, 100 S.Ct. 2183]. *Massiah* proscribed the secret interrogation of an indicted defendant already represented by counsel. In *Massiah,* government agents arranged for an undercover agent, Massiah's codefendant, to engage Massiah in conversation pertaining to the charged offenses. A voice transmitter placed by

agents at the scene of the meeting relayed the conversation to them. In *Henry,* defendant made incriminating statements to a paid informant who was ostensibly only a cellmate sharing Henry's common plight.

We think *Massiah* and *Henry* are not pertinent here. *Massiah* and its progeny rest upon the premise that an accused speaking with a known government agent is aware that his statements may be used against him because the parties are "arm's-length" adversaries. (*Henry, supra,* p. 273 [65 L.Ed.2d p. 123].) The relationship between a defendant and his victim, as prosecuting witness against him, is similarly adversarial. This is no less true merely because the prosecuting witness here is a spouse. No breach of trust by a false friend is involved when an accused initiates a conversation to intimidate the prosecuting witness against him from testifying.

The instant case is also unlike *Massiah* and *Henry,* because the police did not intentionally create a situation where defendant was likely to make incriminating statements. No one twisted his arm to place telephone calls to his wife. Mrs. Wojtkowski's few references to the attack were in response to defendant's suggestion that she discourage prosecution of the offense, rather than comments initiated by her to elicit statements from defendant.

Defendant relies on *People* v. *Walker* (1983) 145 Cal.App.3d 886, at pages 895-897 [193 Cal.Rptr. 812], as authority for suppression of the telephone conversations. In *Walker,* the defendant was accused of murdering his wife. He telephoned her sister from jail and discussed with her his state of mind at the time of the offense and his trial strategy. The sister recorded these conversations with the prosecution's approval. The trial court ordered the recordings suppressed on *Massiah* grounds, but denied Walker's motion for dismissal. The appellate court affirmed the conviction, but concluded at page 897, "that suppression of the recorded conversation was a legally sufficient sanction."

The People make a cogent argument when they note that *Walker* is distinguishable because Walker did not know that his sister-in-law was a witness for the prosecution and working to aid them, whereas here, defendant knew that his wife was a prosecution witness, and the very purpose of his call was to dissuade her from proceeding with the prosecution. In addition, we do not know whether the sister in *Walker* deliberately attempted to elicit incriminating remarks from Walker.

Defendant argues that recording his telephone conversation with his wife violated his attorney-client privilege under *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742 [157 Cal.Rptr. 658, 598 P.2d 818].) Our Supreme Court held in *Barber, supra,* page 752, that a defendant's right to counsel

is violated when an undercover police agent, posing as a codefendant, is present at confidential attorney-client conferences. The factual premise for defendant's argument here is that defendant revealed his trial strategy (defense of consent and impeachment of Mrs. Wojtkowski's credibility) during the call.

The *Barber* rule is inapplicable here, however, for the reason that Mrs. Wojtkowski was not an agent provocateur. What trial strategy defendant chose to reveal to the prosecuting witness against him, he did so willingly. Defendant admitted during the conversation that his attorney had counseled him not to speak with her. Moreover, our examination of the transcript of this recording indicates that defendant was *anticipating* impeachment as a trial strategy: Mrs. Wojtkowski: "I thought you said he told you not to talk to me." Defendant: "He did, but I know—I know when I do talk to him, I know what he's going to say to me. Right. First thing he's going to say is, 'We'll have to blow her credibility.'" Thus, defendant may not have been revealing an attorney-client confidence but merely anticipating possible strategy.

Defendant's final attack on the recording is that it constitutes an illegal search and seizure under *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507] and *North* v. *Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 502 P.2d 1305, 57 A.L.R.3d 155]. *Katz* concerned the surreptitious government recording of a telephone call made from a public telephone booth. The Supreme Court held that the uninvited government ear constituted an unreasonable search and seizure because it violated defendant's reasonable expectation of privacy. (*Katz, supra,* p. 359 [19 L.Ed.2d p. 586].) *North, supra,* concerned the surreptitious recording of a police station conversation between defendant and his wife ostensibly left in private to confer. Its holding was based upon the reasonable expectation of privacy of marital communications. (*North, supra,* p. 310.)

Neither decision is pertinent here. Defendant could have no reasonable expectation of privacy concerning this conversation with his wife; she was the prosecuting witness against him, his attorney advised him not to speak with her, and he suspected the conversation was being recorded. *Katz* does not hold that a defendant has a constitutionally protected expectation that the victim he is trying to intimidate will not betray him by recording the conversation. Further, defendant could have no reasonable expectation of the privacy of a marital communication as the privilege does not exist where one spouse commits a crime against the other. (Evid. Code, §§ 980, 985.)

Even if admission of this particular recording was erroneous, however, such error would be harmless beyond a reasonable doubt. (*United States* v.

*Henry, supra,* 447 U.S. 264, 274, fn. 13 [65 L.Ed.2d 115, 125]; *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Defendant admitted committing the offenses in the three prearrest telephone calls and his son witnessed the assault upon his mother. Defendant does not, and indeed, could not challenge the legality of the prearrest calls. (*Hoffa* v. *United States* (1966) 385 U.S. 293, 302 [17 L.Ed.2d 374, 382, 87 S.Ct. 408].)

[. . . . . . . . . . . . . . . . . . . . . . . . . .]*

Accordingly, the judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.

---

*See footnote, *ante,* page 1077.