[No. A046535. First Dist., Div. One. Mar. 19, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM YUVINE HAMMONS et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication.

**COUNSEL**

Jerry H. Langer, under appointment by the Court of Appeal, and Kathleen Scheidel, Deputy State Public Defender, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DOSSEE, J.**—Defendants were convicted of having stolen jewelry in a store burglary. On appeal, Darby contends that the trial court erred in admitting into evidence burglary loot seized from the car he was driving when the police caught them. Both defendants contend that the trial court erred in admitting into evidence a recording of a conversation between them while in custody awaiting arraignment, and in enhancing their sentences on account of a loss to the victim of over $100,000. Hammons additionally contends that the trial court erred in using the standard jury instruction on possession of recently stolen property as evidence of guilt and that the trial court deprived him of his federal constitutional right to represent himself.

*Facts*

$104,913.29 worth of jewelry was taken from the Best Store in Pleasant Hill in a burglary on the night of August 24-25, 1988. The glass had been

broken out of one of the store's entrance doors and the glass in 10 of the jewelry display cases had been smashed. At 4:18 a.m. on August 26, 1988, police stopped a car speeding south on United States Highway 101, about 450 miles away. Anthony T. Darby was the driver. William Yuvine Hammons was a backseat passenger. The car contained $90,029.59 worth of the jewelry which had been taken in the Best Store burglary. In addition, ball bearings were found in the car that matched three ball bearings which had been used to smash the glass out of the entrance door of the store.

Neither Darby nor Hammons testified at their trial.

### Procedural History

An information filed December 27, 1988, accused Darby and Hammons of burglarizing the Best Store (Pen. Code, § 459)[1] and of grand theft from the Best Store (§§ 484, 487, subd. 1). The information included a sentence enhancement allegation and a probation ineligibility allegation based on the value of the property involved in their crimes. The information also included individual probation ineligibility allegations and enhancement allegations based on numerous prior felony convictions and prison terms which each defendant had suffered.

Jury trial began on May 22, 1989. On June 1, 1989 the jury returned verdicts finding both defendants guilty, as to both counts. The jury found the enhancement allegation and probation ineligibility allegation, based on the value of the property involved in defendants' crimes, true. After the jury had returned its verdicts, Hammons admitted that he had been convicted of and had served a prison term for murder in Oklahoma, an allegation which had been charged for the purpose of a sentence enhancement of one year pursuant to section 667.5, subdivision (b). Thereafter, the court made a finding that Darby had been convicted of and served a prison term for robbery in Los Angeles County, an allegation which had likewise been charged under section 667.5, subdivision (b).

Hammons was sentenced to six years in state prison for the burglary and enhancements under sections 667.5 and 12022.6. Darby was sentenced to five years in state prison for the burglary and a section 12022.6 enhancement. Sentences for the grand theft and attendant enhancements were stayed pursuant to section 654 for both defendants.

### The Taped Conversation

Defendants were arrested on August 26, 1988. As of August 31, 1988, they had not yet been arraigned, and they were in custody at the Ventura County

---

[1]All statutory references hereinafter, unless otherwise noted, are to the Penal Code.

jail. During questioning by Detective Steven Bourke of the Ventura County Sheriff's Department on that day, Darby invoked his right to remain silent. Hammons, on the other hand, said he thought Darby "was going to cop to the bur[g]lary and he'd like to talk to him before he said anything." Officers then put both defendants in an interview room together and surreptitiously monitored and tape recorded the incriminating conversation which defendants then had with each other. Cross-examination of Bourke at the preliminary hearing in this case revealed the circumstances under which defendants had that conversation.[2]

"Q.  . . . Prior to leaving them in the room alone through you indicated to them apparently tape recorded, [*sic.*] that they would be alone and it would be a private conversation, something to that effect?

"A.  No, sir.

"Q.  You never indicated that at all?

"A.  I never said it would be a private conversation like that. I said we're leaving.

"Q.  And you can talk by yourselves?

"A.  Words to that effect, yes. I don't know exactly what they were.

"Q.  In other words just the 2 of you. You told them it would be conversation between just the 2 of you meaning Mr. Hammons and Mr. Darby, correct?

"A.  If those are exact words I'm not sure but it's likely he said something to that effect.

"Q.  You led them to believe that this was in fact a private conversation between just the 2 of you?

"A.  Yes, sir."

After defendants had their monitored conversation in the absence of the police, both defendants confessed to Bourke, in each other's presence, that

---

[2] The parties stipulated that the trial court could consider the reporter's transcript of the preliminary hearing in ruling on the admissibility of the surreptitiously recorded conversation. The trial court ruled that "the reporter's transcript shall be deemed in evidence for the purpose of any and all motions pending before the Court." (Cf. *People* v. *Neighbours* (1990) 223 Cal.App.3d 1115, 1118-1120 [273 Cal.Rptr. 32].)

they had perpetrated the Best Store burglary. The trial court excluded these confessions from evidence on the ground that they were not free and voluntary, but denied defendants' motions to suppress evidence of their surreptitiously recorded conversation, and the prosecutor introduced that conversation into evidence, playing the tape recording for the jury.

Both defendants claim on appeal that the recording of their conversation with each other should have been suppressed because the recording was made in violation of their federal constitutional right to be free of unreasonable searches and seizures.

█ "An illegal search or seizure violates the federal constitutional rights only of those who have a legitimate expectation of privacy in the invaded place or seized thing. [Citation.] The legitimate expectation of privacy must exist in the particular area searched or thing seized in order to bring a Fourth Amendment challenge. [Citations.] A defendant bears the burden to show he had such an expectation. [Citations.]" (*People* v. *Hernandez* (1988) 199 Cal.App.3d 1182, 1189 [245 Cal.Rptr. 513], italics omitted.) The burden is bipartite, consisting of a subjective and an objective component. "[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " (*Katz* v. *United States* (1967) 389 U.S. 347, 361 [19 L.Ed.2d 576, 588, 88 S.Ct. 507] (conc. opn. of Harlan, J.).)

█ Ordinarily, an arrested person being detained before his or her arraignment does not have an objectively reasonable expectation of privacy, such that surreptitious monitoring and recording of incriminating statements by him or her violates the Fourth Amendment. (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 27-30 [196 Cal.Rptr. 704, 672 P.2d 110]; *North* v. *Superior Court* (1972) 8 Cal.3d 301, 308 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; *id.*, at pp. 317-318 (dis. opn. of Sullivan, J.); *Ahmad A.* v. *Superior Court* (1989) 215 Cal.App.3d 528, 535 [263 Cal.Rptr. 747]; *People* v. *Elwood* (1988) 199 Cal.App.3d 1365, 1372 [245 Cal.Rptr. 585].) However, such an expectation of privacy can arise, under circumstances where the arrested person and a person with whom he was conversing "were lulled into believing their conversation would be confidential." (*North* v. *Superior Court, supra*, at p. 311.) █ In the present case, defendants contend that the representations which the police made to them before they had their incriminating conversation with each other were such a lulling.

At oral argument, the Attorney General conceded that the police lulled defendants into believing there would be a private conversation. The

Attorney General nevertheless maintained the exclusionary rule of *North* should not apply because the representations of privacy in *North* were much stronger than the lulling which occurred in the present case.

We disagree. Here, the representations of privacy, if anything, were stronger. In *North*, the lulling did not arise from explicit verbal representations by the police, but from actions. The detective who had arrested the defendant surrendered his private office to the defendant and the defendant's wife "so that they might converse . . . exit[ed] and shut . . . the door, leaving them entirely alone." (*North v. Superior Court, supra,* 8 Cal.3d at p. 311.)

The only reasonable interpretation to be given to Detective Bourke's testimony is that the police led defendants to believe that they would have a private conversation, and that the police in fact made an express representation of privacy. Thus, arguably, the police created an expectation of privacy in a setting where ordinarily such an expectation would be unreasonable.

The People point out that in *North*, the intercepted conversation between husband and wife was privileged under Evidence Code sections 917 and 980, and that the conversation at issue in the present case enjoyed no comparable privilege. (See *North v. Superior Court, supra,* 8 Cal.3d at p. 310; *Donaldson v. Superior Court, supra,* 35 Cal.3d at pp. 31-32; *People v. Finchum* (1973) 33 Cal.App.3d 787, 791 [109 Cal.Rptr. 319].)

"The *North* opinion stood on two grounds: the marital privilege and the deliberate creation of an expectation of privacy." (*Donaldson v. Superior Court, supra,* 35 Cal.3d at p. 31.) The *Donaldson* court noted that during the 10 years following *North*, all attempts to suppress surreptitiously monitored conversations had failed in absence of a privileged relationship (*id.* at p. 32), and that situation appears unchanged (see e.g., *Ahmad A. v. Superior Court, supra,* 215 Cal.App.3d 528, 535-536; *People v. Elwood, supra,* 199 Cal.App.3d at p. 1372). However, the *Donaldson* court also stated that the proposition "that no one can reasonably expect privacy in a jail or police station unless the conversation is protected by an evidentiary privilege," was a "legal fiction." (*Donaldson v. Superior Court, supra,* 35 Cal.3d at p. 34; see *People v. Blair* (1969) 2 Cal.App.3d 249, 256 [82 Cal.Rptr. 673].)

■    We must resolve the issue of whether one can ever reasonably expect privacy in a police station absent a privileged relationship. We hold that an expectation of privacy based upon express representations by police officers, even in a jailhouse setting, is one which society is prepared to recognize as reasonable. When, as shown under the circumstances of this

case, the police make an express representation that a conversation will be private, they create a legitimate and reasonable expectation of privacy and the surreptitious monitoring and recording of that conversation is violative of the Fourth Amendment. In the instant case, therefore, the trial court erred in refusing to suppress the evidence of the conversation between the defendants.

The People argue that the error, if it occurred, was harmless. They point out that uncontroverted circumstantial evidence demonstrated that defendants were in Contra Costa County with Darby's car shortly before the burglary and that they were caught in the same car with 90 percent of the booty about 24 hours after the burglary. However, this circumstantial evidence does not compel the conclusion that defendants were burglars or thieves, as distinguished from fences or couriers, guilty only of receipt of stolen property. The error was not harmless, and reversal is compelled.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

We reverse the judgment and remand for retrial.

Newsom, Acting P. J., and Stein, J., concurred.

---

*See footnote, *ante*, page 1710.