[No. A055508. First Dist., Div. Two. Aug. 31, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD WESLEY PLYLER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

538

COUNSEL

Rodger Paul Curnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Stan M. Helfman and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.—**

### INTRODUCTION

Donald Wesley Plyler was convicted after jury trial of three counts of committing a lewd and lascivious act upon a child by force or duress (Pen. Code, § 288, subd. (b)).[1] He was acquitted of one count of rape with a foreign object by force. The trial court reduced the offenses to violations of section 288, subdivision (a) (lewd and lascivious act upon a child without force), and sentenced appellant to state prison for a term of 12 years. Plyler appeals from this judgment.

### STATEMENT OF FACTS

Appellant was convicted of the molestation of two young girls, Cecilia S. and Tina G., whom he had befriended and photographed regularly. A professional photographer, he had met both girls on the street and photographed them with their parents' permission. Appellant met Cecilia (nine years old), Tina (eight years old) and their friend Dawn L. (ten years old) in 1981.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

### DISCUSSION

### I.

*Admissibility of Tape Recordings of Appellant's Telephone Conversations With Tina*

Appellant contends the tape recording of his telephone conversation with Tina on January 21, 1989, was inadmissible under the Fourth, Fifth, and Sixth Amendments to the United States Constitution and under sections 2600-2601. He further contends the court erred in concluding that portions of the tape of a January 20, 1989, telephone conversation as well as the

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

*See footnote, *ante,* page 535.

January 21, 1989, telephone conversation could be used for impeachment. We disagree.

## A. *The Facts*

Appellant was arrested on January 13, 1989, for the molestation of Cecilia. Appellant initially agreed to answer questions after he had been advised of his constitutional rights. When the questioning began to focus upon his relationship with Cecilia, he asserted his right to counsel. Later that day, appellant telephoned Shirley Woolworth, Tina's grandmother, to ask her to advise his friend, Jobie, that he was in jail. About 2 a.m. on January 14th, appellant called collect from the jail in Monterey to find out whether Woolworth had contacted Jobie. Woolworth advised appellant that he could reach Jobie at her place of work. Appellant called Woolworth again at 8:40 a.m. on the 15th to learn whether the police had contacted Tina. Plyler said repeatedly, "They will."

Appellant was assigned a deputy public defender at his arraignment on January 17, 1989. Woolworth telephoned Detective Anderson on the 17th to advise him of appellant's telephone calls. Anderson went to Woolworth's home on the 19th and, with her permission, attached a tape recorder to the telephone. He instructed Woolworth and Tina to activate the recorder for all incoming calls and to turn off the machine when the call was personal. Anderson also told Tina that when appellant called, "not to be nervous, to be herself, and attempt to get Mr. Plyler to discuss the acts of molest upon her and Cecilia."

### 1. *First Tape: January 20, 1989*

On January 20, Detective Anderson instructed the officer in charge of the county jail in Monterey to give the following message to appellant: "[C]all Shirley, collect. That was it. That was the exact message."

Appellant testified that he was asleep in the medical module of the county jail under heart medication when a deputy opened his cell and told him he was to call Shirley Woolworth. The deputy was holding a white cordless phone. Appellant reached for it but the deputy withdrew his hand and said, " 'This is my private phone. Those [indicating toward the day room] are your private phones.' "[2] Appellant placed the collect call and talked to Woolworth. After they talked for a while Woolworth said, " 'Well, Tina's here. Let me put her on.' "

---

[2] Appellant took the deputy's statement that he was supposed to call Woolworth as an order, for early in his incarceration he learned that "when a deputy told you to do something, you do

During the first recorded conversation, Tina made numerous statements attempting to elicit incriminating statements from appellant. When Tina indicated she "had to get off the phone," she concluded the conversation with: "I don't know. Call me again tomorrow. Call back here. I'll be here."

### 2. *Second Tape: January 21, 1989*

Appellant called Shirley again the following day and, after conversing with her, asked her to put Tina on. During this conversation, appellant made various admissions as to his behavior with Tina, including statements that he felt guilt, shame and remorse. He wanted to discuss a woman who had been "involved" with her brother, and the way they dealt with it was to forget about it and to act like it never happened. He stated they worked it out together. During the entire conversation on the 21st, Tina asked no questions and made no statements which could be construed as attempting to elicit a response from appellant. Her remarks were limited to "uhhum." "I don't know," "Yeah, I'm here," "Yeah," and "O.K."

### 3. *Trial Court Rulings*

Before trial, appellant moved to exclude both jail tapes on Fourth, Fifth, and Sixth Amendment grounds. The court ruled that the tape recording of the first conversation (January 20th) was inadmissible because it was elicited in violation of appellant's rights under the Fifth Amendment as construed in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The court had previously denied motions to suppress under the Fourth Amendment. It reiterated its ruling when it ruled that the second conversation (Jan. 21st) was admissible under the Fourth, Fifth, and Sixth Amendments. For purposes of impeachment, however, both tapes were admissible.

The court reasoned that Tina was acting as a police agent and that on the first tape she tried to deliberately elicit incriminating statements from the appellant, warranting suppression of the first tape on Fifth Amendment grounds. The court distinguished the second tape, finding there was no interrogation. At trial, the second jail tape was played for the jury in the presentation of the prosecution's case-in-chief. Toward the end of the trial before the defense rested, the trial court returned to the issue of the use of the tapes for impeachment and reaffirmed its prior rulings. Appellant advised the court that but for the court's ruling, he would have testified in his own defense.

---

it or get in trouble." Appellant recounted how he had gotten into trouble for failing to stand in a particular place to which a deputy had directed him.

## B. *Fourth Amendment and De Lancie (§§ 2600-2601)*

### 1. *Fourth Amendment*

■ As summarized in *People* v. *Hammons* (1991) 235 Cal.App.3d 1710 [5 Cal.Rptr.2d 317]: "Ordinarily, an arrested person being detained before his or her arraignment does not have an objectively reasonable expectation of privacy, such that surreptitious monitoring and recording of incriminating statements by him or her violates the Fourth Amendment. (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 27-30 . . . ; *North* v. *Superior Court* (1972) 8 Cal.3d 301, 308 . . . ; *id.*, at pp. 317-318 (dis. opn. of Sullivan, J.); *Ahmad A.* v. *Superior Court* (1989) 215 Cal.App.3d 528, 535 . . . ; *People* v. *Elwood* (1988) 199 Cal.App.3d 1365, 1372 . . . .) However, such an expectation of privacy can arise, under circumstances where the arrested person and a person with whom he was conversing 'were lulled into believing their conversation would be confidential.' (*North* v. *Superior Court, supra*, at p. 311.)" (*Id.*, at p. 1715.)

■ Appellant contends he was "lulled" into such expectation of privacy by the deputy's telling him to use the other phones to make his call to Woolworth, and because a deputy had once answered his question whether the phone calls were recorded in the negative. We disagree. The trial court in finding no Fourth Amendment violation inferentially found no such "lulling" and no reasonable expectation of privacy.[3] The trial court was free to disbelieve appellant's self-serving statements as to what he was told on a prior occasion.[4]

Moreover, had appellant been told the phone calls were not recorded at the jail, this would provide no assurance that his call was not monitored *by the recipient*, as was the case here. (See, e.g., *Hoffa* v. *United States* (1966) 385 U.S. 293 [17 L.Ed.2d 374, 87 S.Ct. 408]; *People* v. *Phillips* (1985) 41 Cal.3d 29, 52 [222 Cal.Rptr. 127, 711 P.2d 423]; *People* v. *Murphy* (1972) 8 Cal.3d 349 [105 Cal.Rptr. 138, 503 P.2d 594] [upholding against Fourth Amendment challenges the admissibility of tape recordings of conversations surreptitiously made by associates of the defendant who were acting at the direction of law enforcement officers].)

---

[3]Appellant claims the trial court found he was "lulled" into an expectation of privacy. This is not so. The trial court specifically found no Fourth Amendment violation for the second tape. Its suppression of the first tape rested on its finding that Tina, acting at the police's behest, "interrogated" appellant, eliciting information from him.

[4]*Hammons* held that where the police "make an express representation that a conversation will be private, they create a legitimate and reasonable expectation of privacy and the surreptitious monitoring and recording of that conversation is violative of the Fourth Amendment." (235 Cal.App.3d at p. 1717.) However, in *Hammons*, the deputy testified he had led appellant and another inmate to believe their conversation would be private and the Attorney General conceded the police lulled them into believing there would be a private conversation. (*Id.*, at p. 1715.)

### 2. *De Lancie and Sections 2600-2601*

■ Appellant contends that recording his call to Tina constituted a violation of his right to privacy under sections 2600 and 2601, as applied in *De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142].

"Section 2600 provides that a person sentenced to imprisonment in a state prison may, during any period of confinement, be deprived of such rights, and only such rights as necessary to provide for the reasonable security of the institution and the reasonable protection of the public. Rights protected include the right to privacy. [Citation.]

"*De Lancie* was a civil action for injunctive relief, prompted by disclosures at a trial revealing that personnel at the San Mateo County jail were routinely monitoring conversations between visitors and pretrial detainees. The Supreme Court in *De Lancie* held that allegations charging such monitoring was conducted for purposes other than institutional security stated a cause of action for violation of sections 2600 and 2601. (*De Lancie* v. *Superior Court, supra*, 31 Cal.3d 865, 877.) 'That holding necessarily implied that secret monitoring of conversations between detainees and visitors, "undertaken for the purpose of gathering evidence for use in criminal proceedings, rather than to maintain the security of the jail" (*id.*), was unlawful.' (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 35 . . . .)" (*People* v. *Elwood* (1988) 199 Cal.App.3d 1365, 1369 [245 Cal.Rptr. 585].)

No case cited to us applies *De Lancie* in a context such as this, where the person recording the call was a *party* to the call and we refuse to apply it so.[5]

Were we to conclude that *De Lancie* was violated by the surreptitious recording of a phone conversation by one of the parties thereto at police direction, we would not conclude the court erred in refusing to suppress the second recording. "*De Lancie* relied solely upon state grounds and on sections 2600 and 2601 in its analysis. [Citation.] [¶] However, in *Donaldson*, the Supreme Court explained that "Permitting state officials to listen in on such [confidential or intimate] conversations for reasons unrelated to jail security—indeed without any reason at all—offends the fundamental right of privacy guaranteed by the California Constitution. (Cal. Const., art. I, § 1.)' (*Id.*, at p. 35.) Consequently, even though *De Lancie*'s holding did not turn upon whether there was a reasonable expectation of privacy in a custodial

---

[5]To apply *De Lancie* in such circumstances could result in a situation where a crime victim could not request the police to monitor harassing phone calls from the perpetrator, if such tapes were intended to be used as evidence at trial.

setting, it presupposes that monitoring in violation of sections 2600 and 2601, 'without any reason at all,' violates the fundamental right of privacy guaranteed by the California Constitution." (*People* v. *Elwood, supra*, at pp. 1370-1371.)

However, "Proposition 8 (Cal. Const., art. I, § 28, subd. (d)) precludes exclusion of evidence as a remedy for violations of search and seizure provisions of the federal or state Constitution except to the extent that exclusion remains federally compelled. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 . . . .)" (*People* v. *Elwood, supra*, at p. 1372.) In other words, "in the absence of express statutory authority therefor courts may not exclude evidence seized in violation of either the state or federal Constitution unless exclusion is compelled by the federal Constitution." (*In re Lance W.* (1985) 37 Cal.3d 873, 888 [210 Cal.Rptr. 631 [694 P.2d 744].) Numerous cases considering the issue have held that "[w]hile *De Lancie* v. *Superior Court, supra,* established the right of pretrial detainees to a reasonable expectation of privacy even within the confines of jail, the statute does not provide for exclusion of evidence in the event law enforcement fails to honor that expectation. (See *People* v. *Carrera* (1989) 49 Cal.3d 291, 326 . . . ; *Donaldson* v. *Superior Court, supra,* 35 Cal.3d at p. 34; *People* v. *Elwood* (1988) 199 Cal.App.3d 1365, 1371 . . . .) Since exclusion is not otherwise federally compelled, it may not be judicially invoked in the wake of Proposition 8. (*People* v. *McCaslin* (1986) 178 Cal.App.3d 1, 6-7 . . . ; *People* v. *West* (1985) 170 Cal.App.3d 326, 330-331 [216 Cal.Rptr. 195].)" (*Ahmad A.* v. *Superior Court* (1989) 215 Cal.App.3d 528, 536 [263 Cal.Rptr. 747]; accord, *People* v. *Von Villas* (1992) 11 Cal.App.4th 175, 219-220 [15 Cal.Rptr.2d 112].)[6]

## C. *Fifth Amendment*

▮ Appellant argues that both tapes were the product of "official intimidation" through the "custodial interrogation" by Tina as an agent of the police. Clearly, appellant's statements to Tina were not the product of "custodial interrogation" within the meaning of *Miranda*. (*Illinois* v. *Perkins* (1990) 496 U.S. 292, 297 [110 L.Ed.2d 243, 251, 110 S.Ct. 2394]; *People* v. *Williams* (1988) 44 Cal.3d 1127, 1539-1540 [245 Cal.Rptr. 635, 751 P.2d 901].) *Miranda* was designed to protect and preserve an accused's Fifth Amendment privilege against self-incrimination during incommunicado interrogation of individuals in a police-dominated atmosphere. (*Miranda* v.

---

[6]Appellant does not claim on appeal and did not claim below that the recording of these conversations violated federal or state statutes other than those discussed above. (See tit. III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. § 2510 et seq.) and §§ 630-637.2.) In *People* v. *Murtha* (1993) 14 Cal.App.4th 1112 [18 Cal.Rptr.2d 324], we recognized an exception to these statutes for conversations recorded by a party to the conversation. (*Id.,* at p. 1121.)

*Arizona, supra,* 384 U.S. at p. 445 [16 L.Ed.2d at p. 707].) In *Perkins,* the United States Supreme Court held that a conversation between an incarcerated suspect and an undercover agent posing as a fellow inmate did not implicate the concerns underlying *Miranda.* "It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation. . . . When the suspect has no reason to think that the listeners have official power over him, it should not be assumed that his words are motivated by the reaction he expects from his listeners." (*Illinois* v. *Perkins, supra,* 496 U.S. 292, 297 [110 L.Ed.2d 243, 251].) "Questioning by captors, who appear to control the suspect's fate, may create mutually reinforcing pressures that the Court has assumed will weaken the suspect's will, but where a suspect does not know that he is conversing with a government agent, these pressures do not exist." (*Id.,* at p. 297 [110 L.Ed.2d at p. 251].)

"A similar result has been reached by our highest court. In *People* v. *Williams* (1988) 44 Cal.3d 1127 . . . , the court found that *Miranda* 'has never been applied to conversations between an inmate and an undercover agent.' (*Id.,* at pp. 1141-1142.) The reason why *Miranda* has no application to this type of conversation is because '*Miranda* warnings serve to dispel the coercive effect of *police custodial* questioning' (*id.,* at p. 1142, italics in original) . . . ." (*People* v. *Guilmette* (1991) 1 Cal.App.4th 1534, 1540 [2 Cal.Rptr.2d 750].)

Despite appellant's protestations that his phone call to Tina amounted to "official intimidation" and a custodial interrogation, one would be hard-pressed to characterize appellant's phone conversations with Tina as "police custodial" interrogation as defined in *Miranda* and as construed by subsequent decisions. Even if appellant had been "forced" to place the call, he did not know Tina was working with the police. Under *Perkins,* absent such knowledge there is no reason to assume he might feel coerced and no Fifth Amendment violation occurred.[7]

D. *Sixth Amendment*

 Appellant contends that admission of the second tape and the court's willingness to allow the first tape to be used for impeachment violated his Sixth Amendment right to counsel. We disagree.

As recently summarized by the California Supreme Court in *People* v. *Clair* (1992) 2 Cal.4th 629 [7 Cal.Rptr.2d 564, 828 P.2d 705]: "The Sixth

---

[7]It appears then that the trial court erred in suppressing the first tape on Fifth Amendment grounds. As to the second tape, the court correctly determined that appellant initiated the call and that Tina did not interrogate him. She asked no questions and made no comments or statements designed to elicit any information or admissions from appellant. (See *People* v. *Guilmette, supra,* 1 Cal.App.4th 1534, 1540.)

Amendment provides that 'In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.'

█ "In *Massiah* v. *United States* (1964) 377 U.S. 201 . . . , and its progeny, the United States Supreme Court held that 'the government'— whether federal or state—'may not use an undercover agent to circumvent the Sixth Amendment right to counsel once' that right has attached. (*Illinois* v. *Perkins* (1990) 496 U.S. 292, 299 . . . .) After attachment, 'the Sixth Amendment prevents the government from interfering with the accused's right to counsel.' (*Id.*, at p. 299 . . . .) Before attachment, by contrast, the constitutional provision is not implicated. (*Id.*, at pp. 299-300 . . . .)

█ "The Sixth Amendment right to counsel 'does not attach until a prosecution is commenced, that is, " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " ' (*McNeil* v. *Wisconsin* (1991) 501 U.S. 171, __ [115 L.Ed.2d 158, 166-167, 111 S.Ct. 2204, 2207], [citations].) It is not enough, for example, that the defendant has become the focus of the underlying criminal investigation. (1 LaFave & Israel, Criminal Procedure (1984) § 6.4(e), p. 466; see, e.g., *People* v. *Hovey* (1988) 44 Cal.3d 543, 561 . . . .)

"The Sixth Amendment right to counsel, the United States Supreme Court has recently declared, is 'offense specific.' (*McNeil* v. *Wisconsin, supra,* 501 U.S. 171 at p. __ [115 L.Ed.2d at p. 166, 111 S.Ct. at p. 2207].) That is to say, it attaches to offenses as to which adversary judicial criminal proceedings have been initiated—and to such offenses alone. (*Id.*, at p. __ [115 L.Ed.2d at pp. 166-167, 111 S.Ct. at p. 2207.)" (*People* v. *Clair, supra,* 2 Cal.4th at p. 657.)

Where the right to counsel has attached and one acting at the government's request "deliberately elicits incriminating statements from a represented defendant," (*People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1442 [278 Cal.Rptr. 452]) "the 'incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, . . .' [Citations.]" (*Ibid.*) "This is true even if the incriminating information is obtained during the state's investigation of other, uncharged crimes. (*Maine* v. *Moulton, supra,* 474 U.S. at p. 180 . . . .)" (*Ibid.*)

█ At the time of the recordings, counsel had been appointed to represent appellant at his arraignment for the charges relating to Cecilia. On appellant's motion to suppress the recordings, the trial court determined that at the time of the recordings, appellant's right to counsel had attached for the

offenses relating to Cecilia. However, no right to counsel had attached as to the offenses against Tina. No charges were pending as to her at that time. Hence, the second tape (January 21st), which contained no references at all to Cecilia was admissible in its entirety. The first tape (January 20th), which contained references to Cecilia and the pending charges was admissible only after expungment of all such references. The first tape had been excluded from the prosecution's case-in-chief on Fifth Amendment grounds, but was admissible for impeachment upon expungement of all references to the offenses against Cecilia. Because appellant did not testify, only the first tape was admitted into evidence.

It is true that "the 'precise boundaries' of the ' "offense-specific" limitation' have yet to be 'flesh[ed] out.' (*McNeil* v. *Wisconsin, supra*, 501 U.S. at p. __ [115 L.Ed.2d at p. 174, 111 S.Ct. at p. 2214] (dis. opn. of Stevens, J.).)" (*People* v. *Clair, supra*, 2 Cal.4th at p. 658.) Nevertheless, we have concluded the trial court correctly determined that at the time of the recordings, no attachment of the Sixth Amendment right had occurred with respect to the subsequently charged offenses involving Tina. In this case, the *charged* offenses against Cecilia did not involve Tina.[8] They occurred at separate times and places. Neither girl was present during the charged offenses in which the other was the victim. We are confident that the offenses involving Cecilia did not embrace the offenses against Tina for purposes of attachment of the Sixth Amendment.[9]

Appellant argues that because he had been charged with offenses directed toward Cecilia on January 17th, he was an "accused"; the offenses perpetrated upon Tina were "related"; consequently, the right to counsel had attached as to all offenses. We disagree. The "closely related" doctrine (see *People* v. *Boyd* (1978) 86 Cal.App.3d 54 [150 Cal.Rptr. 34]; *In re Michael B.* (1981) 125 Cal.App.3d 790 [178 Cal.Rptr. 291]; *People* v. *Sharp* (1983) 150 Cal.App.3d 13 [197 Cal.Rptr. 436]) has been thoroughly undermined by the "offense-specific" doctrine enunciated by the United States Supreme Court. Indeed, *People* v. *Clair, supra*, 2 Cal.4th 629, recognized that "[t]hose cases are significantly helpful to [the appellant's] position only to the extent that

---

[8]Had appellant been charged with the 1981 molestation of both girls, the question of attachment would be more complicated. However, this prior offense was never charged.

[9]This is not to say that the charges were completely severable. Certainly the evidence relating to the charges was cross-admissible under Evidence Code section 1101. The trial court implicitly recognized this by refusing to sever counts 1 and 2 (relating to Cecilia) from counts 3 and 4 (relating to Tina).

they support the proposition that the Sixth Amendment right is not 'offense-specific.' To that extent, however, they are no longer vital." (*Id.*, at p. 658, fn. omitted.)[10]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## CONCLUSION

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

Appellant's petition for by the Supreme Court was denied November 23, 1993.

---

[10]Because we resolve the Sixth Amendment claim under the "offense-specific" doctrine, we need not address respondent's contention that the second tape was admissible in any event under the "listening post" exception to the Sixth Amendment (*Kuhlmann* v. *Wilson* (1986) 477 U.S. 436 [91 L.Ed.2d 364, 106 S.Ct. 2616]; *People* v. *Hovey* (1988) 44 Cal.3d 543, 560 [244 Cal.Rptr. 121, 749 P.2d 776]; *People* v. *Catelli, supra*, 227 Cal.App.3d 1434, 1442-1444) because Tina did nothing to deliberately elicit incriminating statements from appellant, but merely listened.

*See footnote, *ante*, page 535.