## Norfolk

CLAUSAN WINSTON HARRIS, s/k/a
CLAUSEN WINSTON HARRIS, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0663-93-1

Decided January 17, 1995

COUNSEL

Andrew A. Protogyrou (Knight, Dudley, Dezern & Clarke, P.L.L.C., on brief), for appellant.

Kathleen B. Martin, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

KOONTZ, J.—Clausen Winston Harris, Jr. (Harris) appeals his convictions for robbery as a principal in the first degree and for burglary, abduction and two counts of rape as a principal in the second degree. Harris asserts the trial court (1) erred in failing to declare a mistrial after evidence of his prior bad acts was introduced at trial; (2) erred in admitting into evidence a writing pad which was tainted by the hearsay act of its delivery to the police by Harris' wife; (3) erred in admitting into evidence statements made by Harris to his wife outside the presence, but within the hearing of a third party; and (4) that the jury's verdicts which found him guilty as a second degree principal were in conflict with the Commonwealth's evidence and theory of the case. Finding no error, we affirm.

These convictions arise out of a methodically planned and executed series of criminal acts against the victim at her home. The Commonwealth presented evidence that Harris made a forced entry into the victim's apartment and secreted himself there after taking some of her personal property. When the victim returned home, she was raped twice and then forced to bathe and assist her assailant in cleaning the apartment to remove evidence of the crime. The victim was also forced to surrender ten dollars to her assailant. The victim identified Harris as her assailant.

After his arrest, Harris admitted to his participation in this and other crimes. Harris alleged that an accomplice, whom he identified only as "Atlantic," participated in the break-in. Harris further told police that another man (presumably "Atlantic") had committed the rapes. Harris would not identify Atlantic.

Harris consented to a search of his apartment. When police arrived at the apartment, Harris's wife and Robert Pettapiece, a co-lessee, were both present and also consented to the search. During the search, Harris's wife delivered to the police a bag containing a writing pad on which Harris had made notes concerning addresses and vehicle license tags as part of his surveillance of "who was coming and going out of their residences" in the neighborhood surrounding the victim's apartment.

Prior to trial, the trial judge ruled that evidence of Harris's involvement in other, similar crimes would not be admissible at trial. During the Commonwealth's case-in-chief, the following testimony was received from Pettapiece concerning the writing pad, which police had recovered from Harris' apartment.

Q: In response to your question, "What is it for?" what did the defendant say?

A: So he could commit —

Q: No. No. I'm sorry. Strike that.

The defense then asked to be heard on a motion and the jury was excluded. Harris' counsel stated that Pettapiece had testified that Harris had committed "burglaries" and asked that his testimony be stricken entirely. The Commonwealth's attorney argued that Pettapiece had not spoken the word before she interrupted. The trial judge stated that he "heard enough to let [him] know what [the word] was." Following an extensive conference between counsel and the court, Pettapiece was recalled to the stand and asked to repeat his testimony. Pettapiece first said that his answer was, "So he could commit burglaries." In response to a question from the Commonwealth, Pettapiece stated that he did not say "burglaries" but had begun to say the word.

The trial judge stated that Pettapiece had not completely spoken the word "burglaries," that the Commonwealth had acted as swiftly as possible to avoid the improper testimony, and that rather than strike Pettapiece's testimony, the court would issue a curative instruction to the jury. Harris then instructed his counsel to make a motion for a mistrial. For the reasons stated in the earlier ruling, the court denied the motion. The court recalled the jury and instructed them to disregard Pettapiece's last response to the Commonwealth's question concerning the purpose of the writ-

ing pad.

■ Harris first asserts that the trial court erred in overruling his motion for a mistrial. We disagree. The conduct of the trial is committed to the sound discretion of the trial court. *Cunningham v. Commonwealth*, 2 Va. App. 358, 365, 344 S.E.2d 389, 393 (1986). The trial judge determined that the statement was not so prejudicial as to warrant a new trial and instructed the jurors to disregard it. The judge's determination and curative action are owed deference on appeal. Moreover, the jury is presumed to have followed the instruction to disregard the statement in question. *Spencer v. Commonwealth*, 240 Va. 78, 95, 393 S.E.2d 609, 619, *cert. denied*, 498 U.S. 908 (1990); *see also Hogan v. Commonwealth* 5 Va. App. 36, 44, 360 S.E.2d 371, 375 (1987). The objectionable evidence, if in fact presented and heard by the jury, was presented by inadvertence and the error was timely corrected by a cautionary instruction. Accordingly, it was not error for the trial court to deny the motion for a mistrial.

Harris next contends that the trial court erred in admitting the writing pad into evidence' because the delivery of the pad to the police by Harris' wife was expressive conduct amounting to hearsay. Harris' reliance on *Stevenson v. Commonwealth*, 218 Va. 462, 237 S.E.2d 779 (1977), is misplaced. In *Stevenson*, the wife delivered a bloody shirt to police in response to their inquiries about the clothing her husband had worn at the time of the alleged crime. *Id.* at 464, 237 S.E.2d at 781. The Court held that the wife's act was expressive conduct amounting to hearsay. *Id.* at 465-66, 237 S.E.2d at 781-82. In the present case, Harris' wife was not responding to any direct inquiry by police concerning the pad or her husband's surveillance activities. Rather, she was merely responding to a valid search of the apartment, surrendering to police items belonging to her husband which they would have discovered in due course. Accordingly, there was no expressive conduct implied in her act.

■ Harris further asserts that the trial court erred in permitting Pettapiece to testify concerning an argument he overheard between Harris and his wife. Although the issue was once in doubt, it has long been accepted in this Commonwealth that spousal privilege does not apply when a third party is privy to the conversation. *Menefee v. Commonwealth*, 189 Va. 900, 907, 55 S.E.2d 9, 13 (1949); *Pilcher v. Pilcher*, 117 Va. 356, 368, 84 S.E.

667, 671 (1915). The evidence here showed that Harris and his wife were aware that Pettapiece was within their hearing, and, thus, their conversation was not wholly private. That portion of the conversation which Pettapiece overheard was therefore outside the spousal privilege and properly admitted at trial.

■ Finally, Harris asserts that the jury's verdicts finding him guilty as a principal in the second degree are in conflict with the Commonwealth's theory that Harris was the sole assailant and was a principal in the first degree as to all the crimes charged. However, the jury is not required to convict upon the theory presented by the Commonwealth or acquit if they have doubts about the efficacy of that theory. To the contrary, the appellate courts of this Commonwealth have consistently held that the jury, as the trier of fact, should be affirmed unless their verdict is without support in light of all the evidence. *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). Accordingly, where credible evidence in the record supports the jury's verdict, we will not speculate on the jury's reasoning, nor will we subvert that reasoning absent a clear showing of error. *See Wolfe v. Commonwealth*, 6 Va. App. 640, 647-48, 371 S.E.2d 314, 318 (1988) (holding that a jury's determination of a defendant's guilt and not the logic of its verdicts is the issue to be considered on appeal).

The evidence presented to the jury included both the testimony of the victim, which favored the theory of the Commonwealth, and the statements made by Harris to police implicating himself as a principal in the second degree. Accordingly, while the jury's verdicts holding Harris accountable as a first degree perpetrator for robbery and a second degree perpetrator for all other crimes charged do not reflect a consistent interpretation of the evidence, none of the convictions is without support in the evidence and so may be affirmed despite this inconsistency. *Id.* at 649, 371 S.E.2d at 319.

For these reasons, we affirm Harris' convictions.

*Affirmed.*

Baker, J., and Bray, J., concurred.